## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RICHARD P. LAWLESS,

       *Plaintiff*,

  v.

DEPARTMENT OF DEFENSE,

       *Defendant*.

Civil Action No. 21-2859 (TJK)

## <u>MEMORANDUM OPINION</u>

Richard Lawless wrote a book about his experience working for the Central Intelligence Agency and the Department of Defense. But after conducting prepublication review, DOD determined that it contained classified information. After some negotiation, the parties still disagreed as to the propriety of many of DOD's proposed redactions. So Lawless sued, challenging the designations of this material as classified and alleging that DOD was violating his First Amendment rights by prohibiting him from publishing the unredacted manuscript. The parties cross-move for summary judgment. The Court has reviewed the redacted portions of Lawless's manuscript and other submissions, including classified declarations submitted by both parties. It concludes that DOD has properly designated the redacted information as classified and that Lawless has not shown that the information was either officially acknowledged or obtained solely from public sources. Thus, Lawless has no First Amendment right to publish the information, so the Court will grant DOD's motion for summary judgment and deny Lawless's cross-motion for the same.

## I.  Factual and Procedural Background

Lawless is no stranger to classified material. From 1972 to 1987, he served as an operations officer for the Central Intelligence Agency ("CIA"), a role in which he specialized in "nuclear

proliferation and Asian security."  ECF No. 34-1 ¶ 1.  Then, from 2002 until 2007, he served as the Under Secretary of Defense for East Asian and Pacific Security Affairs with the Department of Defense ("DOD").  *Id.* ¶ 2.  For both roles, Lawless held a security clearance that gave him access to certain classified material, and, as a condition of that clearance, he entered into a secrecy agreement prohibiting him from publishing or otherwise disclosing classified information.  *Id.* ¶¶ 3–4; ECF No. 16-6.  Relevant here, the secrecy agreement also required him to submit for pre-publication review any writings he sought to publish.  ECF No. 34-1 ¶ 4.

Several years after leaving the government, Lawless sought to publish a book about his government experience titled *Hunting Nukes: A Fifty-Year Pursuit of Atomic Bomb Builders and Mischief Makers*, in which he recounts his involvement addressing nuclear proliferation in North Korea.  ECF No. 1 ("Compl.") ¶ 5; ECF No. 34-1 ¶ 5.  As the secrecy agreement required, he submitted the manuscript of this book to the CIA's Prepublication Classification Review Board in October 2020.  ECF No. 34-1 ¶ 6.  The Board found around 500 instances of classified information that required redaction, with which Lawless "fully complied."  ECF No. 31-1 ¶¶ 7–8.  The Board completed its review in June 2021 but told Lawless that he could not publish the manuscript until DOD completed its own review.  ECF No. 34-1 ¶¶ 7–8.  In the summer of 2021, DOD informed Lawless that there was additional classified information that he would need to redact or remove but that it had yet to finish its review.  *Id.* ¶¶ 9–10.

In October 2021, Lawless sued DOD before it had finished its review.  *See* Compl.  He brings three counts, alleging that: (1) his manuscript contained no classified information and that, by restricting him from publishing it, DOD was violating his First Amendment right to publish that information, *id.* ¶¶ 13–21; (2) DOD had unreasonably delayed its prepublication review of his manuscript in violation of the Administrative Procedure Act, *id.* ¶¶ 22–26; and (3) to protect his

First Amendment rights, his attorney should be given access to any classified information DOD claims is in his manuscript, *id.* ¶¶ 27–29.

In December 2021, while this suit was still in its initial stages, DOD provided Lawless with its completed review of the manuscript, detailing the additional classified information that he would have to remove or redact.  ECF No. 34-1 ¶ 11.  Four months later, in April 2022, Lawless responded by submitting to DOD a document with his comments on these new classified designations; the parties then met in-person (without Lawless's counsel present) for a classified discussion of their respective positions.  *Id.* ¶¶ 12–13.  Following that meeting, DOD agreed to narrow or lift certain redactions on fifteen pages, and Lawless withdrew his objection to redactions on five pages. *Id.* ¶ 14.  Still, the parties disagreed over just short of a hundred redactions requested by DOD.  *Id.* ¶ 15.[1]

In July 2022, DOD moved for summary judgment, arguing that Lawless has no First Amendment right to publish the properly classified, redacted information.  ECF No. 16.  In support of that motion, DOD lodged three classified declarations for *ex parte*, *in camera* review.  ECF Nos. 16, 17.  They are from Ilan Goldenberg, the Principal Deputy Assistant Secretary of Defense for International Security Affairs, ECF No. 16-3; Richard C. Johnson, the Deputy Assistant Secretary of Defense for Nuclear and Countering Weapons of Mass Destruction Policy, ECF No. 16-4; and Andrew T. Walter, the Deputy Assistant Secretary of Defense for Nuclear Matters, ECF No. 16-5.

Rather than responding to that motion, Lawless filed two motions of his own seeking relief he believed was necessary before he could oppose DOD's motion for summary judgment.  First,

---

[1] Lawless has since published a *redacted* version of his book.  *See* ECF No. 32-2 ¶ 16 n.1; ECF No. 34-1 ¶ 5.

he moved for a "preliminary and/or permanent injunction" requiring DOD to give him "immediate access to a secure stand-alone computer (along with a copy of DoD's *in camera* classified declarations [submitted in support of its motion for summary judgment]) so that he [could] submit a comprehensive declaration to this Court for consideration and in support of his" opposition to DOD's motion. ECF No. 18-1 at 2. The Court denied the motion. Minute Entry of Aug. 26, 2022. Second, Lawless filed a Motion to Compel Defendant to Provide Access to Secure Stand-Alone Computer and for Authorization to Submit Properly Protected Classification Information to the Court. ECF No. 25. The Court denied that motion, too. ECF No. 28. It held that, consistent with the procedure outlined in *Stillman v. CIA*, 319 F.3d 546 (D.C. Cir. 2003), it would be premature to grant Lawless that relief before the Court had a chance to review the challenged classification determinations to see if it could resolve the issues without additional assistance. ECF No. 28 at 2–4. Thus, the Court ordered that summary-judgment briefing continue. *Id.* at 5.

Lawless then filed his opposition to DOD's motion for summary judgment and a cross-motion for summary judgment. ECF Nos. 31, 32. He included, in support, the declaration of his attorney, ECF No. 31-2, and a declaration prepared by Lawless himself that had been submitted to DOD for prepublication review and was redacted accordingly, ECF No. 31-3. The Court then ordered DOD to lodge for *ex parte*, *in camera* review the unredacted, classified versions of both that declaration as well as the document with Lawless's comments that he had originally provided to DOD in April 2022 preceding the parties' in-person meeting. *See* ECF No. 28 at 5; ECF Nos. 29, 36. DOD filed a reply in support of its summary-judgment motion and cross-opposition to Lawless's cross-motion, ECF Nos. 34, 35, and Lawless filed a cross-reply. ECF No. 38; *see also* ECF No. 41 (providing the Court with the full redacted version of Lawless's manuscript). DOD later characterized Lawless's declaration as focusing on "two classified facts" that Lawless

argues account for the "vast majority" of the redacted, classified information at issue.  ECF No. 44-1 at 5.

After conducting an *ex parte*, *in camera* review of all the classified materials put before it, the Court denied DOD's motion for summary judgment without prejudice.  Minute Order of Sept. 28, 2023.  Noting a previously unidentified issue in the briefing, the Court ordered DOD to "address[] through additional briefing or declarations, with specificity, why the information in the public record cited by Plaintiff in his declaration is not an official release or acknowledgment of information Plaintiff seeks to publish . . . or does not in any other way authorize its publication." *Id.*  In accordance with this order, the parties renewed their cross-motions for summary judgment and addressed the issue identified by the Court.[2]  *See* ECF Nos. 44, 47, 49, 50.  As permitted by the Court, both parties incorporated by reference their previous motions and accompanying materials, preserving the dispute over proper classification.  *See* ECF No. 44-1 at 5 n.1; ECF No. 47 at 4.

The Court also ordered that "Defendant may submit classified briefing or declarations but shall attempt to file as much of this material as possible on the public docket."  Minute Order of Sept. 28, 2023.  When DOD renewed its motion for summary judgment, it lodged a classified supplement and two classified declarations in support of its motion.  *See* ECF No. 44-1 at 12, 14; ECF No. 45.  These include a declaration by Paul J. Jacobsmeyer, who serves in the Defense Office of Prepublication and Security Review, ECF No. 48-1, and a supplemental declaration by Andrew T. Walker, the Deputy Assistant Secretary of Defense for Nuclear Matters, ECF No. 48-2.

---

[2] The Court denied without prejudice Lawless's first cross-motion for summary judgment after he brought a renewed cross-motion as part of the second round of briefing that mooted the first one.  *See* Minute Order of Mar. 4, 2024.

## II.     Legal Standards

Under Federal Rule of Civil Procedure 56, a court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Rels. Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)) (emphasis in original). A dispute is "genuine" if the evidence is such that a reasonable factfinder could return a verdict for the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" if it is capable of affecting the outcome of the litigation under the applicable substantive law. *Anderson*, 477 U.S. at 248. "The movant bears the initial burden of demonstrating that there is no genuine issue of material fact." *Montgomery v. Risen*, 875 F.3d 709, 713 (D.C. Cir. 2017). But in response, to survive a motion for summary judgment, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).

## III.    Analysis

### A.     Lawless Has No First Amendment Right to Publish the Redacted Information

In Count One, Lawless asserts a First Amendment right to publish the information that DOD seeks to redact from his manuscript. The government can "protect substantial government interests by imposing reasonable restrictions on employee activities that in other contexts might

be protected by the First Amendment," and it "has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service." *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980).  To that end, "current and former government employees have no First Amendment right to publish properly classified information to which they gained access by virtue of their employment." *Shaffer v. Def. Intel. Agency*, 102 F. Supp. 3d 1, 9 (D.D.C. 2015); *see also Stillman*, 319 F.3d at 548 ("If the Government classified the information properly, then [Plaintiff] simply has no first amendment right to publish it.").  Lawless does not contest these foundational principles.  *See* ECF No. 32-1 at 13 ("To be certain, no one has the right to publish properly classified information.").  Still, he argues that he should be able to publish it, either because it was officially acknowledged or obtained it from public sources.

After conducting an *ex parte, in camera* review of the classified materials submitted, and for the reasons explained below, the Court finds that (1) the redacted information is properly classified and that (2) Lawless has not shown that the redacted information was officially acknowledged or obtained solely from public sources.  Thus, Lawless has no First Amendment right to publish the information, and DOD is entitled to summary judgment on Lawless's First Amendment claim.

### 1.     The Redacted Information Is Properly Classified

The first question before the Court is whether the information DOD seeks to redact is properly classified.  The D.C. Circuit has explained that, before a court "plunge[s] ahead to resolve the constitutional question" raised by a prepublication review case, it must "determine first whether it can resolve the classification *ex parte*."  *Stillman*, 319 F.3d at 548.  This is because "[i]f . . . the information was not classified properly, then [Lawless] may publish the manuscript."  *Id*.

Resolving the classification question is not always an easy task.  "Due to the mosaic-like nature of intelligence gathering, . . . what may seem trivial to the uninformed may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in context."  *McGehee v. Casey*, 718 F.2d 1137, 1149 (D.C. Cir. 1983) (cleaned up).  As a result, courts are generally "ill-equipped to become sufficiently steeped in foreign intelligence matters to serve effectively in the review of secrecy classifications in that area."  *Halkin v. Helms*, 598 F.2d 1, 9 (D.C. Cir. 1978) (quotation omitted); *see also Ctr. for Nat. Sec. Stud. v. DOJ*, 331 F.3d 918, 928 (D.C. Cir. 2003) ("[T]he judiciary is in an extremely poor position to second-guess the executive's judgment in this area of national security.").  Thus, the Court is mindful that "the Executive Branch generally is better positioned than the Judiciary to assess the need to classify certain information," *Shaffer*, 102 F. Supp. 3d at 10, and recognizes that it should defer to the government's classification decisions, *see, e.g.*, *Taylor v. Dep't of the Army*, 684 F.2d 99, 109 (D.C. Cir. 1982) (according "utmost deference" to classification affidavits); *Salisbury v. United States*, 690 F.2d 966, 973 (D.C. Cir. 1982) (the government has a "large measure of discretion" to make classification determinations, and the court saw "no reason to upset the agency's exercise of that discretion").

Still, in prepublication review cases, because the plaintiff already possesses the information he wishes to publish, he has a "strong First Amendment interest in ensuring that Government censorship results from a *proper* classification of the censored portions."  *Shaffer*, 102 F. Supp. 3d at 10.  Thus, notwithstanding the deference a court owes the government about classification decisions, "courts must assure themselves that the reasons for classification are rational and plausible ones."  *McGehee*, 718 F.2d at 1149.  And in deciding whether the reasons offered by the government are rational and plausible, a court must review those reasons de novo.  *See Shaffer*, 102

F. Supp. 3d at 10; *see also McGehee*, 718 F.2d at 1147–49 (holding that a heightened de novo review applies in prepublication review cases). In sum, while a court should defer "to reasoned and detailed Government explanations of the classification decision," it must review de novo whether the agency has sufficiently provided those explanations. *Shaffer*, 102 F. Supp. 3d at 10.

With those principles in mind, the Court considers the propriety of the challenged redactions, which DOD has classified under both Executive Order 13,526 and the Atomic Energy Act.[3] The Court reviews each in turn.

### i.    Executive Order 13,526

DOD classified part of the redactions under Executive Order 13,526 (the "Order"), which restricts disclosure of national security information. The Order establishes four conditions for the government to properly classify information: "(1) an original classification authority is classifying the information; (2) the information is owned by, produced by or for, or is under the control of the United States Government; (3) the information falls within one or more of the categories of

---

[3] Lawless's view of DOD's classification designations under these authorities is largely confined to the April 2022 document and his supplemental declaration, which, he stresses, do not comprise his "complete position" and are largely "useless" given the classification constraints. ECF No. 31 at 16–17. In his opposition to DOD's motion for summary judgment and cross-motion for summary judgment, he laments that he cannot "substantively detail[]" his positions on DOD's classification designation and urges that the Court provide for alternative procedures, including permitting the parties to participate in an *in camera* classified discussion, appoint a special master to assist in the review efforts, or grant Lawless's counsel access to the classified information. *Id.* at 16, 21–26. But as the Court explained when denying Lawless's Motion to Compel, the procedure laid out by the D.C. Circuit for prepublication-review cases is for the Court to "'determine first whether it can resolve the classification *ex parte*' 'without the assistance of plaintiff's counsel'" by "inspect[ing] the author's 'manuscript and consider[ing] any pleadings and declarations filed by the Government, as well as any materials filed by [the author].'" ECF No. 28 at 2–3 (quoting *Stillman*, 319 F.3d at 548). For these reasons, the additional procedures Lawless proposes would only have been appropriate if, after the Court's *in camera* review of Lawless's manuscript and the parties' supporting classified and unclassified materials, the Court could not resolve the classification dispute. *See Stillman*, 319 F.3d at 549. As explained below, however, it can, so there is no need for these additional procedures.

information listed in section 1.4 of [the] order; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage." *See* Classified National Security Information, Exec. Order No. 13,526 § 1.1(a)(1)–(4), 75 Fed. Reg. 707, 707 (Dec. 29, 2009), *as corrected by* 75 Fed. Reg. 1013 (Dec. 29, 2009). DOD has satisfied each of these conditions with respect to its redactions.

The first condition DOD must satisfy is that an "original classification authority" classified the information targeted by the redactions. Exec. Order No. 13,526 § 1.1(a)(1), 75 Fed. Reg. at 707. The Order defines such authority as "an individual authorized in writing, either by the President, the Vice President, or by agency heads or other officials designated by the President, to classify information in the first instance." *Id.* § 6.1(gg), 75 Fed. Reg. at 727. Here, two of the government's declarants, Goldenberg and Johnson, both declared that they are original classification authorities. *See* ECF No. 16-3 ¶ 4; ECF No. 16-4 ¶ 4. And Goldenberg and Johnson both assert that the redactions in Lawless's manuscript "remain[] properly and currently classified." ECF No. 16-3 ¶ 4; ECF No. 16-4 ¶ 5. DOD has therefore satisfied the first condition for classification under the Order.

Next, for DOD to have properly classified the redactions, the redacted information must be "owned by, produced by or for, or . . . under the control of the United States Government." Exec. Order No. 13,526 § 1.1(a)(2), 75 Fed. Reg. at 707. DOD satisfies this second condition as well. As described below, the information at issue pertains to such topics as "military plans, weapons systems, or operations," "foreign government information," "intelligence activities," and "foreign relations or foreign activities of the United States." *See* ECF No. 16-3 ¶ 7; ECF No. 16-4 ¶¶ 16,

18, 20.  Information relating to these topics is quintessentially information that was produced by or for the government.  Moreover, Lawless himself describes his manuscript as recounting his "experiences, both as a career intelligence officer and a high-ranking policy maker."  Compl. ¶ 6; *see also* ECF No. 34-1 ¶ 5.  He further claims that his book describes the "day-to-day operations" of his role with the CIA and his involvement in nuclear talks with North Korea.  Compl. ¶ 6.  Thus, there is an additional basis to conclude that the redactions concern information that was "produced by or for[] or is under the control of the United States Government."  Exec. Order No. 13,526 § 1.1(a)(2), 75 Fed. Reg. at 707.[4]

Next, the Court examines whether the redactions "fall[] within one or more of the categories of information listed in section 1.4" of the Order.  Exec. Order No. 13,526 § 1.1(a)(3), 75 Fed. Reg. at 707.  Section 1.4 contains several categories relevant to the redactions here: "military plans, weapons systems, or operations," "foreign government information," "intelligence activities," and "foreign relations or foreign activities of the United States."  *Id.* § 1.4(a)–(d), 75 Fed. Reg. at 708. The Court has reviewed Goldenberg's and Johnson's classified declarations, both of which confirm that the redactions fall into one of these four categories.  *See* ECF No. 16-3 ¶ 7; ECF No. 16-4 ¶¶ 16, 18, 20.

Finally, for DOD's classification of the redactions to be proper, it must establish that the disclosure of the information they contain could reasonably "be expected to result in damage to the national security."  Exec. Order No. 13,526 § 1.1(a)(4), 75 Fed. Reg. at 707.  DOD, through its declarants Goldenberg and Johnson, has satisfied this condition also.  *See* ECF No. 16-3 ¶¶ 7– 9; ECF No. 16-4 ¶¶ 9–21.  The redactions were classified at the "SECRET" level.  ECF No. 16-3

---

[4] The Court addresses below Lawless's argument that the redacted information was based only on "deductions he made in reliance upon public, open-source materials."  ECF No. 47 at 8.

¶¶ 8–9; ECF No. 16-4 ¶ 15.  Information at the SECRET level is information that "could . . . cause serious damage to the national security" if disclosed without authorization.  Exec. Order No. 13,526 § 1.2(a)(2), 75 Fed. Reg. at 707–08.  The risks to national security identified in the government affidavits need only be "real and serious enough to justify the classification decision"—they need not "rise to the level of certainty."  *McGehee*, 718 F.2d at 1150.  Goldenberg and Johnson each "identify [and] describe" the real, serious damage to national security the redactions could cause if published without authorization.  *See* Exec. Order No. 13,526 § 1.1(a)(4), 75 Fed. Reg. at 707.  Specifically, they conclude that such disclosure could cause that damage by disclosing information across the four Section 1.4 categories mentioned above.  ECF No. 16-1 at 17–18.

First, some redactions pertain to "military plans, weapons systems, or operations" that could reasonably be expected to result in serious damage to national security if disclosed without authorization.  *See* Exec. Order No. 13,526 § 1.4(a), 75 Fed. Reg. at 708.  This category includes national-security harm from disclosing both past and future operations.  *See Am. C.L. Union v. DOD*, 752 F. Supp. 2d 361, 370-71 (S.D.N.Y. 2010) (finding that the government declarants had "sufficiently identified and described the possible damage to U.S. national security" under Section 1.4(a) based on damage to future and past military plans and operations).  "[D]isclosure of [such] information today would give great insight to individuals who could exploit that information to frustrate the future attempts by our military and U.S. Government to protect its citizens abroad."  *Miller v. DOJ*, 562 F. Supp. 2d 82, 101 (D.D.C. 2008) (quotation omitted).  So too here.  Johnson describes how redactions pertaining to military plans, weapons systems, and operations could reasonably be expected to cause serious harm to national security.  ECF No. 16-4 ¶¶ 16–17, 20–21.

Second, other redactions pertain to "foreign government information" that could reasonably be expected to result in serious damage to national security if disclosed without authorization. *See* Exec. Order No. 13,526 § 1.4(b), 75 Fed. Reg. at 708. To begin, the Order "presume[s]" that "unauthorized disclosure of foreign government information" "cause[s] damage to the national security." *Id.* § 1.1(d), 75 Fed. Reg. at 707. But even without that presumption, courts often reach the common-sense conclusion that "disclosure of . . . cooperation with foreign agencies 'could not only damage the [government's] ability to gather information but could also impair diplomatic relations.'" *Malizia v. DOJ*, 519 F. Supp. 338, 344 (S.D.N.Y. 1981) (quotation omitted). In this case, Goldenberg and Johnson both explain that several redactions cover such foreign government information, the unauthorized disclosure of which could reasonably be expected to cause serious national-security damage. ECF No. 16-3 ¶¶ 7–9; ECF No. 16-4 ¶¶ 18–19 (noting, for instance, redactions that pertain to "information supplied by foreign governments").

Third and fourth, some of the redactions relate to "intelligence activities" and to "foreign relations or foreign activities of the United States" that could reasonably be expected to result in serious damage to national security if disclosed without authorization. *See* Exec. Order No. 13,526 § 1.4(c)–(d), 75 Fed. Reg. at 708. The harm that results from disclosure of intelligence sources, methods, and activities, and information relating to foreign relations or activities is plain: "the [government] obtains information from the intelligence services of friendly nations and from agents operating in foreign countries. The continued availability of these foreign sources depends upon the [government's] ability to guarantee the security of information that might compromise them and even endanger the personal safety of foreign agents." *Snepp*, 444 U.S. at 512; ECF No. 16-1 at 19 (collecting like cases). As Goldenberg and Johnson detail, several redactions contain information about intelligence activities, and some contain information about foreign activities

and foreign relations of the United States.  ECF No. 16-3 ¶¶ 7–9; ECF No. 16-4 ¶¶ 18–19.  And they describe the harm that would result from that information's unauthorized disclosure.  *See, e.g.*, ECF No. 16-3 ¶¶ 8–9 (explaining, for instance, how certain redactions, if published "would cause serious harm to relations between the United States and a foreign government, or to ongoing diplomatic activities of the United States"); *see also* ECF No. 16-4 ¶¶ 18–19.

The Court must defer to DOD's judgments about the "harmful results of publication" of these redactions.  *Shaffer*, 102 F. Supp. 3d at 11.  And having reviewed their explanations *in camera*, the Court is satisfied that their explanations are rational and plausible and that the unauthorized disclosure of the information comprising these redactions could reasonably be expected to cause serious damage to national security.  The redactions classified under the Order are therefore properly classified.

### ii.     The Atomic Energy Act

DOD also determined that other portions of redacted information in Lawless's manuscript contain classified information under the Atomic Energy Act (the "Act").  The Act establishes the classification system for so-called "Restricted Data," which is, "all data concerning (1) design, manufacture, or utilization of atomic weapons; (2) the production of special nuclear material; or (3) the use of special nuclear material in the production of energy," except information that has been "declassified or removed from the Restricted Data category."  42 U.S.C. § 2014(y).  Generally, the Department of Energy ("DOE") is charged with removing information from the Restricted Data category or declassifying it when it alone determines that the information "can be published without undue risk to the common defense and security."  *Id.* § 2162(a).  And the DOE has established criteria for determining when and how to classify new information as Restricted Data in the first instance.  *See* 10 C.F.R. § 1045.70.

But, as relevant here, when Restricted Data information "relates primarily to the military utilization of atomic weapons," it can be removed from the Restricted Data category only through a joint DOE and DOD determination that the information "can be adequately safeguarded as defense information."  42 U.S.C. § 2162(d)(1).  Information removed from the Restricted Data category is then placed into the "Formerly Restricted Data" category, which "means classified information removed from the [Restricted Data] category under the [Atomic Energy Act] ([42 U.S.C. § 2162](d)), after DOE and DOD jointly determine it is related primarily to the military utilization of nuclear weapons and that the information can be adequately protected in a manner similar to [National Security Information]."  *See* 10 C.F.R. § 1045.30.  National Security Information, in turn, refers to "information that has been determined pursuant to [Executive Order] 13526 or prior or successor [executive orders] to require protection against unauthorized disclosure and is marked to indicate its classification status."  *Id.*[5]  In short, Formerly Restricted Data is still classified information—unless it is declassified.[6]

To declassify Formerly Restricted Data "relating primarily to the military utilization of nuclear weapons," DOE and DOD must jointly determine that the information "may be published

---

[5] Unlike National Security Information, Restricted Data and Formerly Restricted Data are not subject to any form of automatic declassification provided for in Executive Order 13526 because that Order expressly provides that nothing in it "shall supersede any requirement made by or under the Atomic Energy Act of 1954, as amended," and that "'Restricted Data' and 'Formerly Restricted Data' shall be handled, protected, classified, downgraded, and declassified in conformity with the provisions of the Atomic Energy Act of 1954, as amended, and regulations issued under that Act."  Exec. Order No. 13,526 §§ 3.3, 6.2(a), 75 Fed. Reg. at 714–17, 730.

[6] Confirming that Formerly Restricted Data still constitutes classified information, several regulations outline the process for *de*classifying that, and other, data.  *See, e.g.*, 10 C.F.R. § 1045.55 ("When are RD [Restricted Data], FRD [Formerly Restricted Data], and TFNI [Transclassified Foreign Nuclear Information] considered for declassification?"); *id.* § 1045.100 ("How are RD, FRD, and TFNI declassified?"); *id.* § 1045.105 ("What is the method to request the declassification of RD, FRD or TFNI?"); *id.* § 1045.155 ("How is matter marked as containing RD, FRD, or TFNI declassified?").

without undue risk to the common defense and security."  10 C.F.R. § 1045.45(b)(4); *see also id.*

§§ 1045.100, 1045.70.  DOD and the DOE must also jointly prepare classification guides, which

are "written record[s] of detailed instructions . . . that explicitly identif[y] whether specific infor-

mation is classified," for Formerly Restricted Data.  *Id.* §§ 1045.30; 1045.45(d)(4).  Whenever a

person, like Lawless, "generates or possesses matter that potentially contains" Formerly Restricted

Data and intends to release it to the public, an authorized DOD or DOE official must review that

matter "prior to release."  *Id.* § 1045.125(b).  Reviewing officials must then consult the applicable

classification guide to determine whether the information is classified as Formerly Restricted Data.

*Id.* § 1045.130(a).

As applied here, the government's declarant Walter determined that the relevant redactions

contain Formerly Restricted Data and that the redacted information is classified.  ECF No. 16-5

¶¶ 5, 7–11, 13, 15–16; ECF No. 16-1 at 22.  Walter is authorized by DOD Instruction 5210.02 to

develop classification guides for Restricted Data and Formerly Restricted Data "relating primarily

to the military [sic] of nuclear weapons" and to decide when to move matter from the former

category "relating primarily to the military utilization of nuclear weapons" into the latter category.

ECF No. 16-5 ¶ 3; *see also* 10 C.F.R. § 1045.125(b) ("FRD may . . . be reviewed by the appropri-

ate DoD official as specified in DoD Instruction 5210.02.").  In his judgment—which the Court

has reviewed *in camera* and to which the Court must defer—the publication of the redacted infor-

mation would damage the common defense and national security interests of the United States.

ECF No. 16-5 ¶¶ 4, 7–16; *see* 10 C.F.R. § 1045.45(b)(4).  Again, the Court is satisfied that his

explanations are rational and plausible.  Thus, these redactions remain properly classified as For-

merly Restricted Data.

\* \* \* \*

16

For all these reasons, the Court is satisfied that under both Executive Order 13,526 and the Atomic Energy Act, DOD properly classified the information redacted from Lawless's manuscript.

### 2.    Lawless Has Not Shown that the Redacted Information Was Officially Acknowledged

Although the Court concludes that the DOD properly classified the redacted information, Lawless argues that he is nonetheless permitted to publish it.  At least at one point, DOD and the Court understood Lawless to argue that he may do so because it has been "officially acknowledged."  *See Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990)).  DOD spills much ink in both the first and second rounds of briefing explaining why the information redacted in Lawless's manuscript was not officially disclosed.  There are three criteria for determining whether the government has "officially acknowledged" classified information: (1) "the information requested must be as specific as the information previously released"; (2) "the information requested must match the information previously disclosed"; and (3) "the information requested must already have been made public through an official and documented disclosure."  *Id.*

To the extent Lawless ever argued that the government officially acknowledged any of the redacted material, he has now waived that argument, and so the Court need not address it.  *See* ECF No. 47 at 5–6 ("Lawless is not arguing that the information at issue was officially disclosed.").  In any event, on the entire record here, Lawless has not shown that all three criteria are met for any portion of the redacted information.

### 3.    Lawless Has Not Shown that He Obtained the Redacted Information from Public Sources Alone

Toward the end of the second round of briefing, Lawless settled on a final argument: that unlike with Freedom of Information Act ("FOIA") claims—where courts first recognized the "officially acknowledged" doctrine—when it comes to First Amendment claims, he may include properly classified information in his book even in the absence of an official acknowledgment.

According to Lawless, if a former government employee shows that the classified material he seeks to disclose was obtained from public sources, he may republish that material irrespective of its classified designation.  He argues that, in his case, "the information at issue was based on deductions he made in reliance upon public, open-source materials."  ECF No. 47 at 8.  In sum, according to Lawless, he "is not arguing that the information was officially disclosed or declassified: rather, he is asserting that he crafted the information from the outset in reliance upon open-source materials and he has properly cited to those references."  *Id.* at 9.

To be sure, Lawless is right that courts have distinguished between the release of classified information under FOIA and an individual's right to publish classified information under the First Amendment; the constitutional interests at stake in the First Amendment context are greater than those of FOIA requesters.  *See McGehee*, 718 F.2d at 1147 ("This difference between seeking to obtain information and seeking to disclose information already obtained raises [Plaintiff]'s constitutional interests in this case above the constitutional interests held by a FOIA claimant.").  And the D.C. Circuit has held that the government may not censor information "obtained from public sources."  *Id.* at 1141.  In such a case, the Circuit held, "the agent's special relationship of trust with the government is greatly diminished if not wholly vitiated" with respect to that information.  *Id.*

At the same time, a former government employee has no right to publish classified information he obtained from his employment simply because he can point to it—or something close to it—in the public domain.  For starters, a "plaintiff asserting a claim of prior disclosure bears the 'initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld.'"  *Shaffer*, 102 F. Supp. 3d at 9 (quoting *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983)); *see also Boening v. CIA*, 579 F. Supp. 2d 166, 171 (D.D.C. 2008)

(requiring pinpoint cites to any material the plaintiff claimed was in the public domain).  And even then, "merely pointing to public sources" is "insufficient."  *Shaffer*, 102 F. Supp. 3d at 9.  As the D.C. Circuit has observed, "the fact that information resides in the public domain does not eliminate the possibility that further disclosures can cause harm to intelligence sources, methods and operations."  *Fitzgibbon*, 911 F.2d at 766.  That is so because, "in the arena of intelligence and foreign relations there can be a critical difference between official and unofficial disclosures."  *Id.* at 765.[7]  It "is one thing for a reporter or author to speculate or guess that a thing may be so or even, quoting undisclosed sources, to say that it is so; it is quite another thing for one in a position to know of it officially to say that it is so."  *Id.* (citing *Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1370 (4th Cir. 1975)).  Thus, when the government has not confirmed the truth of classified information in the public domain and further disclosure of that information by a former employee would "lend credence to it," *Knopf*, 509 F.2d at 1370, the employee's special relationship of trust persists.

Lawless has not shown that he obtained the redacted material from public sources—and not from his own access to classified information during his government service—such that he might have a First Amendment right to publish it.  To begin, although Lawless references some public sources in the manuscript itself, the comments he submitted to DOD in April 2022, and his declaration, he has not shown that the information in the public domain is as specific as that which

---

[7] Both the Order and implementing regulations of the Act similarly make clear that the *unauthorized* disclosure of information does not nullify the classification status of that information. *See* Exec. Order No. 13,526 § 1.1(c), 75 Fed. Reg. at 707 ("Classified information shall not be declassified automatically as a result of any unauthorized disclosure of identical or similar information."); 10 C.F.R. § 1045.60 ("The unauthorized disclosure of [Restricted Data], [or] [Formerly Restricted Data] . . . does not automatically result in its declassification," but "if a disclosure is sufficiently authoritative or credible, the [DOE] will examine the possibility of declassifying the information.").

he seeks to publish in his manuscript nor that there is a sufficiently exact match between the information in the public domain and that which he seeks to publish. In other words, Lawless has failed to "point[] to specific information in the public domain that appears to duplicate that being withheld." *Shaffer*, 102 F. Supp. 3d at 9 (quoting *Afshar*, 702 F.2d at 1130). That alone dooms his motion.

Even apart from that, Lawless has not shown that he obtained the redacted information *solely* from public sources for other reasons. For example, he makes no such claim in his declaration. And it is hard to see how he could. Indeed, in his complaint, Lawless alleges that the book "provides a first-person account of [his] experiences, both as a career intelligence officer and a high-level policy-maker," and describes "the day-to-day operations of a CIA clandestine services officer." ECF No. 1 ¶ 6. The redacted information in the manuscript about one of the two "classified facts" at issue, ECF No. 44-1 at 5, is largely part of Lawless's account of his government service from a first-person perspective. Thus, he plainly learned that "classified fact" from that service. And even if Lawless failed to learn some isolated part of that redacted information while in government service, a former government employee "should [not] be heard to say that he did not learn of information during the course of his employment if the information was in the [government] and he had access to it." *Knopf*, 509 F.2d at 1371. Under the circumstances, DOD would likely be entitled to restrict Lawless from publishing any such information because the context in which he seeks to do so would help support or confirm the related classified information he seeks to publish that he *did* learn during his government service.

Turning to the other of the two "classified facts" at issue, Lawless appears to reference it when he argues that "the information at issue was based on deductions he made in reliance upon public, open-source materials." ECF No. 47 at 8. But a review of the entire manuscript makes

20

clear that, even assuming Lawless did not learn about this other "classified fact" directly through his government service, the conclusions in his manuscript do not stem solely from public sources—a point the unredacted manuscript would have conveyed to readers.  Indeed, on several occasions, he links his own experiences in government with his conclusion, even hinting that he may be privy to information unknown to the public.  Frankly, that makes sense.  Again, assuming that he reached his conclusion about this "classified fact" on his own, rather than learning about it directly while in government, it would seem impossible for Lawless to have reached such a conclusion while setting aside all he had learned during his career as an operations officer for the CIA focusing on nuclear proliferation and Asian security from 1972 to 1987 or as Under Secretary of Defense for East Asian and Pacific Security Affairs from 2002 to 2007.  *See* ECF No. 34-1 ¶¶ 1, 2.[8]

For these reasons, even though Lawless has made general reference to some public sources that may well contain some of the classified information in his manuscript, that does not mean he has a First Amendment right to publish that information.  The linchpin of a First Amendment analysis in this context remains whether the government has reasonably demonstrated that continued censorship is necessary to "protect substantial government interests."  *Snepp*, 444 U.S. at 509 n.3.  And on the entire record here, as the Court explained in discussing whether DOD properly classified the information under Executive Order 13,526, the declarations submitted by the

---

[8] Lawless's manuscript also includes end notes, some of which reference public sources that are redacted.  Although the end notes do not include specific citations to show exactly what these sources say, the information in the end notes appears largely to support or confirm redacted information in the manuscript's body related to the two "classified facts" at issue, which—as explained above—Lawless obtained, at least in part, from his government service.  To the extent Lawless challenges these redactions, the Court reiterates that a former government employee has no right to publish classified information he obtained from his employment simply because he can point to it—or something close to it—in the public domain, such as these public sources.

government satisfy the Court that the unauthorized disclosure of the redacted information could reasonably be expected to cause serious damage to national security.

**B.      Lawless's Unreasonable Delay Claim is Moot**

Next, Count Two alleges that DOD has unreasonably-delayed its prepublication review of his manuscript in violation of the Administrative Procedure Act.  DOD contends, and Lawless does not contest, that this claim was mooted when DOD completed its review of Lawless's manuscript shortly after he filed suit.  ECF No. 16-1 at 26; *see Day v. D.C. Dep't of Consumer & Regul. Affs.*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.").  The Court agrees that this claim is moot.  However, while DOD asks the Court to enter "judgment in favor of Defendant[] on Lawless's unreasonable-delay claim," ECF No. 16-1 at 27, dismissal is the appropriate course because "[f]ederal courts lack jurisdiction to decide moot [issues] 'because their constitutional authority extends only to actual cases or controversies.'"  *Indian River County v. Rogoff*, 254 F. Supp  3d 15, 18 (D.D.C. 2017); (quoting *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013)); *see also Pinson v. DOJ*, 514 F. Supp. 3d 232, 245 (D.D.C. 2021) ("If facts develop such that a 'decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future,' a case is moot and the court should not decide it." (quoting *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 645 (D.C. Cir. 2011))).  The Court will therefore dismiss this claim as moot.

**C.      Lawless's First Amendment Rights Do Not Require His Counsel to Access to the Redacted Information**

Finally, in Count Three, Lawless alleges that as part of his First Amendment rights, Lawless's counsel must be provided access to the redacted information, even though it is classified. ECF No. 1 ¶¶ 27–29.  Lawless appears to have backed away from this argument in his original

cross-motion for summary judgment by implicitly acknowledging that, under the procedures for prepublication review set out by the D.C. Circuit in *Stillman*, 319 F.3d at 548, there is no unqualified First Amendment right for his counsel to access classified information. *See Rushing v. Leavitt*, No. 03-cv-1969(CKK), 2005 WL 555415, at *5 n.9 (D.D.C. Mar. 7, 2005) (treating a claim in the complaint as conceded because plaintiff "abandon[ed] th[e] claim in his Opposition"). He concedes that the Court need only provide his counsel with access to the classified information if it finds, after an *in camera* review, that it "is not in a position to grant Lawless, or DoD, summary judgment [and] reasonably believes the assistance of Lawless' counsel would be valuable and necessary." ECF No. 32-1 at 25. For all the reasons already discussed, the Court is satisfied that it can resolve the pending motions without assistance from Lawless's counsel. So, to the extent such a First Amendment right exists, it is not implicated by this case. Thus, the Court will enter judgment in favor of DOD on this Count as well.

## IV.    Conclusion

For all these reasons, the Court will grant DOD's renewed motion for summary judgment and deny Lawless's renewed cross-motion for summary judgment, enter judgment in DOD's favor on Counts One and Three, and dismiss Count Two as moot. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 23, 2024